MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:    2022 ME 61
Docket:      Oxf-22-99
Argued:      November 2, 2022
Decided:     December 20, 2022

Panel:       STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

STATE OF MAINE

v.

BETHANY RINGUETTE

JABAR, J.

[¶1]  Bethany Ringuette appeals from a judgment of conviction of gross sexual assault (Class A), 17-A M.R.S. § 253 (2022), entered by the trial court (Oxford County, *McKeon, J.*) after a bench trial, and from her sentence.[1]  On appeal, Ringuette makes two contentions: (1) that the sentencing court erred when, applying the *Hewey* analysis set out in 17-A M.R.S. § 1602 (2022), it set the basic sentence at twenty years in compliance with 17-A M.R.S. § 1252(4-E) (2019); and (2) that the sentencing court erred when it failed to make any findings related to its imposition of a ten-year supervised release.

---

[1]  The Sentence Review Panel granted Ringuette leave to appeal from her sentence, and the sentence appeal merged into the appeal from the conviction pursuant to M.R. App. P. 20(h).

[¶2] On the first issue, we affirm the court's sentence because the court properly set the basic sentence at twenty years, in compliance with the statute. *See* 17-A M.R.S. § 1252(4-E).[2] On the second issue, as the State has conceded, the court erred by not providing findings required by *State v. Cook,* 2011 ME 94, ¶ 30, 26 A.3d 834, regarding its imposition of supervised release. We remand the matter to the court to determine the appropriate length and conditions of supervised release to be imposed and to articulate its analysis and the factors which led to its decision.

## I. BACKGROUND

[¶3] The following facts are drawn from the court's findings of fact made after trial. *See State v. Murphy*, 2015 ME 62, ¶ 2, 124 A.3d 647. Between February and May 2019, Travis Walker made the victim engage in a sexual act with him on three occasions while the victim was under the age of twelve. During the relevant period, Walker and Ringuette were friends and had a dating

---

[2] Title 17-A M.R.S. § 1252(4-E) (2018) has since been repealed and replaced in part by P.L. 2019, ch. 113, §§ A-1, B-14 (effective Sept. 19, 2019) (codified at 17-A M.R.S. § 253-A(2) (2022)). Title 17-A M.R.S. § 253-A(2) provides, "If the State pleads and proves that a crime under section 253 was committed against an individual who had not yet attained 12 years of age, the court shall impose a definite term of imprisonment for any term of years. In determining the basic term of imprisonment as the first step in the sentencing process specified in section 1602, subsection 1, paragraph A, the court shall select a definite sentence of at least 20 years." Because Ringuette was charged when section 1252 was still in effect, and the parties refer to section 1252 in their briefs, we will construe that statute. Although we construe section 1252, this analysis would also apply to section 253-A.

relationship. The first time that Walker sexually assaulted the victim, Walker called Ringuette using social media on his phone asking Ringuette to convince the victim to engage in a sexual act with Walker. During that conversation, Ringuette told the victim that performing the sexual act "is the right thing to do" and although that conversation alone did not convince the victim, Walker ultimately made the victim engage in the sexual act. The victim later told a Child Advocacy Center interviewer that "[Ringuette] said it was okay." Ringuette was not involved on the second occasion that Walker forced the victim to engage in a sexual act with him. The third time that Walker forced the victim to engage in a sexual act with him, Ringuette was present in the room. Ringuette had her phone out and told the victim that she was timing the encounter and showed the victim what to do. In an interview with the police, Ringuette told police officers that Walker had sought her approval for his conduct with the victim and Ringuette was "open to it."

[¶4] The State filed a criminal complaint against Ringuette on July 24, 2019. The grand jury returned an indictment on October 10, 2019, charging Ringuette with one count of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C), and one count of sexual exploitation of a minor (Class A),

4

17-A M.R.S. § 282(1)(C) (2022). Ringuette was arraigned on November 4, 2019.

[¶5]  Following a three-day bench trial, the court found Ringuette guilty of gross sexual assault and not guilty of sexual exploitation of minor.  After trial, Ringuette moved for findings of fact and for a new trial.  The court granted the motion for findings of fact and denied the motion for a new trial.  On March 31, 2022, the court sentenced Ringuette to five years of incarceration followed by ten years of supervised release.

[¶6]  At sentencing, Ringuette objected to the court's setting her basic sentence at twenty years, arguing that section 1252(4-E) did not apply to her because she had been convicted under an accomplice liability theory, rather than as the principal.  The court determined that the statute did apply to Ringuette and, at step one of its *Hewey* analysis, set her basic sentence at twenty years.  *See* 17-A M.R.S. § 1602.  After considering aggravating and mitigating factors as part of the second step in the *Hewey* analysis, the court reduced the basic sentence and set the maximum sentence at five years.  At the third step, the trial court did not suspend any of the maximum sentence it set in the second step.  Pursuant to 17-A M.R.S. § 1252(4-E), however, the trial court imposed supervised release for a period of ten years.  When setting the supervised

release period, the court did not make any specific findings as to why it set the period at ten years.  Ringuette timely appealed and applied for leave to appeal from her sentence.  M.R. App. P. 2B(b), 20(a)(1); 15 M.R.S. §§ 2115, 2151 (2022).  The Sentence Review Panel granted Ringuette leave to appeal from her sentence.

## II.  DISCUSSION

### A.  Scope of Review

[¶7]  Because Ringuette appealed from the conviction and the Sentence Review Panel granted leave for Ringuette to appeal from her sentence, we are authorized to review both the legality and the propriety of the sentence on appeal.  M.R. App. P. 20; 15 M.R.S. § 2155 (2022); *State v. Schmidt*, 2010 ME 8, ¶ 5, 988 A.2d 975.

### B.  Accomplice Liability and Sentencing

[¶8]  Ringuette contends that the court erred when it applied section 1252(4-E) to her sentence and set the basic sentence at twenty years, because she was convicted as an accomplice, rather than as principal, of gross sexual assault.

[¶9]  When sentencing a person convicted of a felony in Maine, the sentencing court is bound by the analysis prescribed in *State v. Hewey* and

6

codified at 17-A M.R.S. § 1602. 622 A.2d 1151 (Me. 1993). The *Hewey* analysis consists of three steps: (1) the court determines "a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the individual"; (2) the court determines "the maximum term of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to the case"; and (3) the court determines "what portion, if any, of the maximum term of imprisonment . . . should be suspended and, if a suspension order is to be entered, determine the appropriate period of probation or administrative release to accompany that suspension." 17-A M.R.S. § 1602(1)(A)-(C). Section 1252(4-E) specifies that when a defendant is convicted under section 253, the court must impose a period of supervised release after making its step-two determination.[3] We review a sentencing court's determination of a basic sentence de novo for misapplication of legal principles and the maximum term of imprisonment for abuse of discretion. *State v. Plummer*, 2020 ME 143, ¶ 10, 243 A.3d 1184.

[¶10] Section 1252(4-E) states, "If the State pleads and proves that a crime under section 253 was committed against a person who had not yet

---

[3] This portion of section 1252(4-E) has since been repealed and replaced by P.L. 2019, ch. 113, § A-2 (effective Sept. 19, 2019) (codified at 17-A M.R.S. § 1602(3) (2022)).

attained 12 years of age, the court, notwithstanding subsection 2 [of section 1252], shall impose a definite term of imprisonment for any term of years. In determining the basic term of imprisonment as the first step in the sentencing process, the court shall select a term of at least 20 years." As alleged and proved in this case, "[a] person is guilty of gross sexual assault if that person engages in a sexual act with another person" and "[t]he other person, not the actor's spouse, has not in fact attained 12 years of age." 17-A M.R.S. § 253(1)(C).

[¶11] Title 17-A M.R.S. § 57 (2022), which defines accomplice liability, states, "A person may be guilty of a crime if it is committed by the conduct of another person for which the person is legally accountable as provided by this section." A person who is an accomplice is legally accountable for the conduct of another. *Id.* § 57(2)(C). "Pursuant to section 57, an accomplice is guilty of the crime as if he acted as a principal, and a guilty verdict rendered on either theory is thus indistinguishable and each is independently sufficient to support a conviction." *State v. Nguyen*, 2010 ME 14, ¶ 15, 989 A.2d 712. "Accomplice and principal liability are alternate means for the commission of a single crime." *Id.* Although we have not addressed whether a person may be an accomplice to the crime of gross sexual assault, we have previously held that "the definition of accomplice liability set forth in the Criminal Code is unlimited so far as the

crimes to which it applies." *State v. Cormier,* 2003 ME 154, ¶ 22, 838 A.2d 356 (alteration and quotation marks omitted).

[¶12]  A principal and an accomplice are not subject to different *Hewey* analyses in arriving at a final sentence.[4]  *See State v. Carrillo*, 2021 ME 18, ¶¶ 42-43, 248 A.3d 193[5] ("Here, whether [the appellant] acted as a principal or an accomplice in [the victim's] murder neither makes any difference to [the appellant's] conviction nor works any change to the statutory sentencing range applicable to that conviction."); *Nguyen*, 2010 ME 14, ¶ 15, 989 A.2d 712 ("[A]n accomplice is guilty of the crime as if he acted as a principal, and a guilty verdict rendered on either theory is thus indistinguishable.").

[¶13]   Ringuette was convicted pursuant to section 253 under an accomplice liability theory because section 57 makes her legally accountable because of her aiding in and encouragement of Walker's illegal acts.  *See* 17-A M.R.S. § 57(3)(A).  Reading sections 57 and 1252(4-E) together, the plain

---

4  This does not limit a sentencing court's discretion in coming to different final sentences for a principal and an accomplice after considering aggravating and mitigating factors at step two of the *Hewey* analysis or sentence enhancements that apply to one defendant but not the other.  *State v. Shortsleeves*, 580 A.2d 145, 149-50 (Me. 1990).  We also note that the court retains the discretion to set the basic sentence higher than twenty years.

5  In *State v. Carrillo*, the court determined that whether the defendant was an active participant in the depraved indifference murder did not matter for sentencing because accomplice liability did not require that the defendant be an "active participant," which is consistent with 17-A M.R.S. § 57 (2022) creating liability for a crime based on the conduct of another.  2021 ME 18, ¶ 43, 248 A.3d 193.

language of the statutes demonstrates the Legislature's intent for an accomplice to be liable as a principal, and where that liability produces a conviction under section 253, section 1252(4-E) mandates that at step one the sentencing court "shall" set a basic sentence of at least twenty years. *See* 17-A M.R.S. §§ 57(2)(C), 1252(4-E)*.*  Because the statute contains only a legislatively mandated basic sentence and not a sentencing enhancement that could require the sentencing court to sentence an accomplice differently from a principal, *see State v. Shortsleeves*, 580 A.2d 145, 149-50 (Me. 1990), the sentencing court did not err when it complied with the statutory mandate, setting Ringuette's basic sentence at twenty years.[6]

### III.  CONCLUSION

[¶14]  Because we hold that a principal and an accomplice are not subject to different processes or analyses when a sentencing court applies the *Hewey* analysis, the sentencing court did not err when it set Ringuette's basic sentence at twenty years, complying with the legislative mandate in section 1252(4-E). We therefore affirm Ringuette's sentence of imprisonment.  We remand for the court to determine the appropriate length and conditions of supervised release

---

[6]  Ringuette does not contend in either her brief or her reply brief that *her* sentence was disproportionate, and therefore we do not consider that issue here. *See State v. Barlow*, 320 A.2d 895, 898 (Me. 1974).

to be imposed and to articulate its analysis and the factors that led to its decision. *Cook*, 2011 ME 94, ¶¶ 29-32, 26 A.3d 834.

The entry is:

> Judgment affirmed as to the term of imprisonment imposed. Remanded to the sentencing court to determine the appropriate length and conditions of supervised release to be imposed and to articulate its findings.

---

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Bethany Ringuette

Joshua Avery-Youngblood, Asst. Dist. Atty. (orally), District III, South Paris, for appellee State of Maine

Oxford County Unified Criminal Docket docket number CR-2019-30399
FOR CLERKS REFERENCE ONLY